**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | |
|---|---|
| JOHN COLBURN on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>BOYCE HYDRO POWER, LLC, EDENVILLE HYDRO PROPERTY, LLC, BOYCE MICHIGAN, LLC, BOYCE HYDRO LLC, WD BOYCE TRUST 2350, WD BOYCE TRUST 3649, WD BOYCE TRUST 3650 LEE W. MUELLER, STEPHEN B. HULTBERG, and MICHELE G. MUELLER,<br><br>*Defendants*. | Case No.: 1:20-cv-11350<br><br>CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff John Colburn, individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Defendants Boyce Hydro Power, LLC, Edenville Hydro Property, LLC, Boyce Michigan, LLC, Boyce Hydro LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650, Lee W. Mueller, Stephen B. Hultberg, and Michele G. Mueller (collectively, "Defendants"). Plaintiff's allegations herein are based upon personal knowledge and belief as to his own acts, upon the investigation of his counsel, and upon and information and belief as to all other matters.

## INTRODUCTION

1. On May 19, 2020, the Edenville Dam failed. As a result, over 10,000 people were evacuated before catastrophic flooding decimated the surrounding areas.

2. After the waters broke through the Edenville Dam, they eventually crested the Sanford Dam, which, despite not failing itself, failed to prevent the flow of the flood.

3. Defendants purchased the Edenville Dam on September 23, 2004. Shortly

following their purchase, the United States Federal Energy Regulatory Commission ("FERC") – through its Regional Engineer – sent a letter to Defendants requesting they submit designs to construct auxiliary spillways to protect the surrounding areas from flooding.

4. Years later, Defendants eventually agreed to construct two auxiliary spillways in 2014 and 2015, but Defendants failed to follow through on their promise.

5. In 2018, FERC informed Defendants that the Edenville Dam posed a significant risk to the surrounding areas. Specifically, FERC noted that "the project spillways are not adequate to pass the probably maximum flood, thereby creating a **grave danger to the public**."

6. Plaintiff brings this action, on behalf of himself and those similarly situated, to recover for the damages they suffered as a direct result of Defendants' failures to remedy the issues in the Edenville Dam.

## PARTIES

### Plaintiff John Colburn

7. Plaintiff John Colburn is a resident of Midland, Michigan.

8. Plaintiff rents his home, which is located at 756 S. Poseyville Road in Midland, Michigan. Plaintiff's home sits along two large ponds, which abut the Tittabawassee River.

9. Plaintiff was forced to evacuate his home as a result of the flooding described in this Complaint, and suffered economic losses in the form of amounts paid to secure alternative housing, food, and other necessities during his evacuation. Plaintiff also lost the use and enjoyment of his home during his evacuation.

### Defendants

10. Defendant Boyce Hydro LLC ("BH"), is a Michigan corporation, which conducts business in the State of Michigan. At all relevant times, BH operates the Edenville Dam.

11. Defendant Edenville Hydro Property, LLC ("EHM") is a limited liability company, formerly known as Boyce Trust Hydro Property 2350, LLC, which conducts business in the State of Michigan. At all relevant times, EHM owned, and still owns, the Edenville Dam.

12. Defendant Boyce Michigan, LLC ("BM") is a Michigan corporation, which conducts business in the State of Michigan. At relevant times, BM acquired and managed the Wixom Reservoir and Tittabawassee and Tobacco River bottomlands, and it owns the property upon which the Edenville Dam sits.

13. Defendant Boyce Hydro, LLC ("BHP"), is a Michigan corporation, which conducts business in the State of Michigan. At all relevant times, BHP operates and funds the Sanford, Edenville, Smallwood, and Secord Dams. BHP is the entity that held a license with the U.S. Federal Energy Regulatory Commission to operate the Edenville dam.

14. Defendant WD Boyce Trust 2350 ("Trust 2350") is a member of Edenville Hydro Property, LLC, a member of Boyce Michigan, LLC, a member of Boyce Hydro LLC, and a member of Boyce Hydro Power, LLC, and conducts business in the State of Michigan.

15. Defendant WD Boyce Trust 3649 ("Trust 3649") is a member of Edenville Hydro Property, LLC, a member of Boyce Michigan, LLC, a member of Boyce Hydro LLC, and a member of Boyce Hydro Power, LLC, and conducts business in the State of Michigan.

16. Defendant WD Boyce Trust 3650 ("Trust 3650") is a member of Edenville Hydro Property, LLC, a member of Boyce Michigan, LLC, a member of Boyce Hydro LLC, and a member of Boyce Hydro Power, LLC, and conducts business in the State of Michigan.

17. Defendant Lee. W. Mueller is a citizen of the State of Nevada. Mueller is a co-trustee and beneficiary of the aforementioned trusts, which own the Defendant entities. Mueller has also served as a member and co-manager of EHP, BM, BHP, and a member, employee, and

co-manager of BH, responsible for operations of the Defendant entities and through them, Mueller conducts business in the State of Michigan.

18. Defendant Stephen B. Hultberg ("Hultberg") is, upon information and belief an individual citizen of the State of Michigan. Hultberg is a co-trustee and beneficiary of the aforementioned trusts, which own the Defendant entities. Hultberg is also a member and co-manager of EHP, BM, and BHP, and a member, employee, and co-manager BH, and through them conducts business in the State of Michigan

19. Defendant Michele G. Mueller ("M. Mueller") is an individual citizen of the State of Nevada. M. Mueller is a co-member of Defendant EHM, BM and BHP, and a member and employee of BH, and through them conducts business in the State of Michigan.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and Defendants Lee W. Mueller and Michele Mueller and the Plaintiff are citizens of different states.

21. This Court has jurisdiction over all Defendants pursuant to Mich. Comp. Laws §§ 600.705(1), 600.705(2) and 600.705(3) because all Defendants: (1) own and operate the Edenville and Sanford Dams, which are the subject of this Complaint, in this District; and (2) regularly conduct business within this District. Through these operations, Defendants intentionally availed themselves of the markets and jurisdiction in this District, granting this Court personal jurisdiction over them.

22. Venue is proper in this judicial district under 28 U.S.C § 1391 because a

substantial part of the events or omissions giving rise to the claim occurred in this District, as the catastrophic flooding occurred within this District.

## FACTUAL ALLEGATIONS

### *The Edenville and Sanford Dams*

23. The Edenville Dam was constructed in 1924 and is located in Beaverton, Michigan.[1] The Edenville Dam is constructed at the confluence of the Tittabawassee River and the Tobacco River. The Edenville Dam created Wixom Lake.

24. The Sanford Dam was constructed in 1925 and is located in Sanford, Michigan. The Sanford Dam is located downstream from the Edenville Dam on the Tittabawassee.

25. Defendants purchased the Edenville Dam on September 23, 2004. Upon information and belief, the Sanford Dam was also purchased by Defendants in 2004.

### *Defendants Habitually Ignore FERC's Warnings*

26. In January of 1999, prior to Defendants purchase of the Edenville Dam, FERC began warning that the Edenville Dam would be unable to handle a large flood. Specifically, FERC warned that the capacity dam's spillways needed to be increased to allow for floodwater to escape downstream safely.

27. In June of 2017, FERC specifically stated, in a Compliance Order, that "Given Edenville dam's high hazard potential rating, the potential loss of life and destruction of property and infrastructure is grave should the project not be maintained and operated appropriately, with consequences that could certainly affect the Village of Sanford, Northwood University, City of

[1] https://blogs.agu.org/landslideblog/2020/05/22/edenville-dam-breach/ (last visited May 26, 2020).

Midland, Michigan, and other areas downstream."[2]

28. The Compliance Order was issued because FERC's "primary concern [of] the licensee's longstanding failure to address the project's inadequate spillway capacity."[3]

29. The Compliance Order includes a timeline of Defendants' failure to reduce the high hazard potential rating of the Edenville Dam, including:

a. In February 2005, FERC issued a letter noting that Defendants failed to complete a probable maximum flood ("PMF") study, even after granting Defendants an extension of time to complete the study. The letter also noted Defendants' plan and schedule to complete auxiliary spillway work was unacceptable.

b. FERC met with Defendants on: December 13-16, 2005; May 22-23, 2007; July 9-11, 2007; March 19-20, 2008; and February 4-5, 2009. These meetings were related to increasing the spillway capacity of the Edenville Dam to pass the PMF.

c. On February 9, 2009, FERC granted an extension on the time to construct the auxiliary spillways.

d. In 2013, Defendants committed to constructing two auxiliary spillways, one to be completed in 2014 and one in 2015. Defendants failed to complete this work.

e. After Defendants' failure to construct the auxiliary spillways in 2014 and 2015, FERC implemented a deadline to construct one spillway in 2015. Defendants failed to meet this deadline after accepting FERC's schedule and requirement in 2014.

f. FERC then implemented deadlines for Defendants to construct an auxiliary spillway in November 14, 2015 and December 31, 2016, but Defendants again failed to meet these deadlines.

g. In March of 2016, Defendants filed a Part 12D Independent Consultant Safety Inspection Report with FERC. The independent consultant responsible for the report stated that Defendants "should continue to work for review and approval of the existing spillway rehabilitation projects which will allow the dam to safely pass the 100% PMF."

---

[2] http://cdn.cnn.com/cnn/2020/images/05/20/ferc.boyce.compliance.order.pdf (last visited May 26, 2020).

[3] *Id.*

h. FERC concluded its timeline by noting: “Thirteen years after acquiring the license for the project, the licensee has still not increased spillway capacity leaving the project in danger of a PMF event. The licensee has shown a pattern of delay and indifference to the potential consequences of this situation. **A situation that must be remedied in order to protect life, limb, and property**.”

30. In 2018, FERC terminated Defendants’ license, shifting regulatory oversight of the Edenville Dam to the Michigan Department of Environment, Great Lakes, and Energy.

***The Failure of the Edenville and Sanford Dams***

31. In the days prior to the failure of the Edenville and Sanford Dams, the surrounding areas received high amounts of rain.

32. At approximately 12:22 a.m. on May 19, 2020, Midland County issued an alert regarding an “imminent dam failure” and advised Edenville Township residents to evacuate to shelters that had been set up at two schools in the area.

33. At approximately 6:00 p.m. on May 19, 2020, the Edenville Dam failed. Additional evacuation orders were issued immediately for Edenville and Sanford, as well as the City of Midland.

34. Govern Gretchen Whitmer also issued an emergency declaration and sent in the National Guard.

35. As the floodwaters escaped the failed Edenville Dam, they flowed to the Sanford dam and overwhelmed it, resulting in the floodwaters toppling over the Sanford Dam.

36. On May 20, 2020, the water levels continued to rise, resulting in additional evacuation orders.

37. To date, the floodwaters have not receded, creating a continued intrusion into the daily lives of the members of the Class that has not yet dissipated. Even for those who did not

suffer property damage, their access to roads, bridges, and other critical infrastructures has been impacted, creating a severe risk to their personal safety.

## CLASS ALLEGATIONS

38. Plaintiff brings this action, individually, and on behalf of a class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All persons and entities that owned residential or commercial property in, or resided in, Gladwin, Midland, or Saginaw counties, and who suffered economic losses, including property damage and amounts paid to relocate, due to the failure of the Edenville and Sanford Dams on May 19, 2020.

39. Excluded from the Class(es) are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family. Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation

40. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information can be obtained through the discovery process. Plaintiff believes, and on that basis allege, that the Class consists of tens of thousands of persons and entities. The number of Class members can be determined based on population records and business registration records.

41. **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to

a. Whether Defendants failed to maintain the Edenville and Sanford dams;

b. Whether Defendants were negligent in their failure to maintain the dams;

c. Whether Defendants breached any duties owed to Plaintiff and the class;

d. Whether Defendants are liable to Plaintiff and the class.

42. **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out Defendants' uniform conduct.

43. **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

44. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIOLATIONS ALLEGED

## COUNT I

**NEGLIGENCE**

45. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

46. Defendants owed a duty of care to the Class.

47. Defendants breached their duty to Plaintiff and the Class by:

a. Their failure to properly maintain and operate the Edenville and Sanford Dams;

b. Their failure to adhere to the recommendations of FERC related to the Edenville Dam, including failing to construct auxiliary spillways;

c. Their failure to develop a PMF to "protect life, limb, and property";

d. Their decision to ignore the hazards posed by the condition of the dams;

e. Their failure to development and implement protocols to mitigate flood events; and

f. Their failure to prevent the failure of the dams.

48. Defendants' breach of duties caused foreseeable harm to Plaintiff. Defendants had actual notice of the harms caused to Plaintiff and the Class through, *inter alia*, FERC's letters and compliance orders issued to Defendants warning them of the widespread property damage and safety risks associated with the failures of the dams.

49. Defendants' breach of duties were the direct proximate cause of injuries suffered by Plaintiff and the Class.

50. Plaintiff and the Class suffered damages, including evacuation of their homes and other properties, relocation costs (including hotel costs and meal costs) and suffered the destruction of their real and personal property.

51. Defendants conduct was willful, wonton, and reckless. Defendants conduct was reckless so as to demonstrate a total lack of concern as to whether Plaintiff and the Class would suffer injuries as a result of Defendants' conduct.

52. Plaintiff and the Class seek all damages authorized by law, including compensatory damages, punitive damages, and attorneys' fees.

**COUNT II**

**STRICT LIABILITY**

53. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

54. Defendants owned, operated, or otherwise had direct control over the operations of both the Edenville Dam and the Sanford Dam. The operation of the dams constitutes ultra-hazardous activity.

55. Defendants owed a duty to Plaintiff and the Class to prevent the dams from catastrophic failure, so as to protect Plaintiff and the Class from both bodily harm and harm to their real and personal properties.

56. Defendants' breach of duties were the direct proximate cause of injuries suffered by Plaintiff and the Class.

57. Plaintiff and the Class suffered damages, including evacuation of their homes and other properties, relocation costs (including hotel costs and meal costs) and suffered the destruction of their real and personal property.

58. The harms suffered by Plaintiff and the Class is the type of foreseeable harm that Defendants should have reasonably anticipated as a result of their activities at the dams, and Defendants had actual knowledge of the harms through FERC's communications with

Defendants, described above.

59. Defendants are strictly liable for the injuries suffered by Plaintiff and the Class because of the ultra-hazardous nature of the activities.

60. Plaintiff and the Class seek all damages authorized by law, including compensatory damages, punitive damages, and attorneys' fees.

**COUNT III**

**NUISANCE (PUBLIC AND PRIVATE)**

61. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

62. Defendants' failure to properly maintain the Edenville and Sanford dams made them likely to fail and release floodwater into the surrounding areas where Plaintiff and the Class reside and/or own structures and/or property. Defendants' conduct constitutes a nuisance.

63. As a direct and proximate result of Defendant's failure to properly maintain the Edenville and Sanford Dams, floodwater has interfered with Plaintiff's and the Class' use and enjoyment of their real and personal property.

64. Plaintiff and the Class suffered damages, including evacuation of their homes and other properties, relocation costs (including hotel costs and meal costs) and suffered the destruction of their real and personal property.

65. The harms suffered by Plaintiff and the Class is the type of foreseeable harm that Defendants should have reasonably anticipated as a result of their activities at the dams, and Defendants had actual knowledge of the harms through FERC's communications with Defendants, described above.

66. The nuisance is continuing and abatable.

67. Plaintiff and the Class seek all damages authorized by law, including compensatory damages, punitive damages, and attorneys' fees.

## COUNT IV

## TRESPASS

68. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

69. Defendants' failure to properly maintain the Edenville and Sanford dams made them likely to fail and release floodwater into the surrounding areas where Plaintiff and the Class reside and/or own structures and/or property. Defendants' conduct constitutes a trespass.

70. Defendants have had exclusive control over the dams since the dams failed on March 19, 2020.

71. Defendants actions in failing to properly maintain the Edenville and Sanford dams were intentional.

72. Plaintiff and the Class suffered damages, including evacuation of their homes and other properties, relocation costs (including hotel costs and meal costs) and suffered the destruction of their real and personal property.

73. The harms suffered by Plaintiff and the Class is the type of foreseeable harm that Defendants should have reasonably anticipated as a result of their activities at the dams, and Defendants had actual knowledge of the harms through FERC's communications with Defendants, described above.

74. Plaintiff and the Class seek all damages authorized by law, including compensatory damages, punitive damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully request that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C. Award actual damages and equitable monetary relief to Plaintiff and the Class, including punitive damages;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief;

F. Award reasonable attorneys' fees and costs; and

G. Grant such further relief that this Court deems appropriate.

**JURY DEMAND**

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

Dated: May 27, 2020

*/s/ Joseph G. Sauder*
Joseph G. Sauder
Matthew D. Schelkopf
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel: (888) 711-9975
jgs@sstriallawyers.com
mds@sstriallawyers.com

*Attorneys for Plaintiff*